UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOSÉ LOPEZ<br><br>*Plaintiff,*<br><br>v.<br><br>GREGORY A. RICHARDSON, Director, Texas Service Center; DAVID ROARK, Director, Texas Service Center; MALETHEA HOLMES-OKEAWOLAM, Texas Service Center; OFFICER # XM0012, Texas Service Center; DANIEL RENAUD, Associate Director, Field Operations Directorate; DONALD W. NEUFELD, Associate Director, Service Center Operations; and LEÓN RODRÍGUEZ, Director, U.S. Citizenship & Immigration Services, in their official capacities,<br><br>*Defendants.* | Case No. _____<br><br>**COMPLAINT** |

Plaintiff José Lopez, by and through his counsel, alleges the following on information and belief:

**INTRODUCTION**

This action challenges the U.S. Department of Homeland Security's ("DHS") unlawful revocation of employment authorization of Plaintiff José Lopez, a young Chicago resident who has lived in the city virtually his entire life, which was done solely on the basis of a preliminary injunction entered by a U.S. District Court in Brownsville, Texas. *Texas v. United States*, 86 F. Supp. 3d 591 (S.D. Tex. 2015), *aff'd*, 809 F.3d 134 (5th Cir. 2015), *aff'd by an equally divided court*, 136 S. Ct. 2271 (2016) (per curiam). The preliminary injunction in *Texas v. United States*, upon which Defendants relied in revoking Mr. Lopez's employment authorization, was

1

unlawfully broad, as Texas and the other plaintiffs in that case lacked standing to obtain, and the district court lacked jurisdiction or remedial authority to enter, a preliminary injunction reaching Illinois. Mr. Lopez is not and has never been a party to the *Texas v. United States* lawsuit; he did not have a full and fair opportunity to defend his interests in that action, and no other party there adequately represented them. Defendants' revocation of Mr. Lopez's employment authorization violated his rights under the Administrative Procedure Act, 5 U.S.C. § 551 *et seq*.

Mr. Lopez came to the United States from Mexico at age four and has lived in Chicago since, for more than 21 years. Mr. Lopez has always called Chicago home. Mr. Lopez—who works full-time to help support his family—graduated from high school in Chicago, has obtained two associate degrees, and hopes to continue his education in January at the University of Illinois, Chicago, where he will pursue a bachelor's degree in finance.

On March 31, 2014, Mr. Lopez submitted his application for Deferred Action for Childhood Arrivals ("DACA"), a federal initiative providing temporary relief from deportation that DHS established in 2012. Because of processing delays, DHS did not approve Mr. Lopez's application until almost a year later, on February 17, 2015.

Pursuant to a November 20, 2014 announcement, which expanded the period of deferred action and employment authorization under DACA from two years to three, Defendants approved Mr. Lopez's DACA application and employment authorization for a three-year period. Several months later, on May 1, 2015, DHS sent Mr. Lopez a letter indicating that his three-year period of employment authorization had been revoked and replaced by an employment authorization valid for two years. The sole ground given for its action was the preliminary injunction issued in *Texas v. United States*, 86 F. Supp. 3d 591 (S.D. Tex. 2015).

The government's reliance on the unlawfully broad *Texas v. United States* preliminary injunction was legally erroneous. Mr. Lopez asks this Court to: (1) declare that the February 2015 preliminary injunction entered in *Texas v. United States* does not apply to Illinois residents such as himself; (2) declare unlawful Defendants' revocation of his employment authorization; (3) vacate and set aside the unlawful revocation, and order reinstatement of Mr. Lopez's three-year employment authorization; and (4) enjoin Defendants from revoking his employment authorization on the basis of the preliminary injunction in *Texas v. United States*.

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as this case arises under the United States Constitution and the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 *et seq*. This Court has remedial authority pursuant to the APA, *id.* § 706, as well as the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02.

2. Venue is proper in the Northern District of Illinois because Plaintiff resides in the district. 28 U.S.C. § 1391(e)(1). Venue also properly lies in the Northern District of Illinois because a substantial part of the events or omissions giving rise to this action occurred in the district. *Id.* § 1391(b).

## PARTIES

3. Plaintiff José Lopez ("José Lopez" or "Mr. Lopez") is a recipient of Deferred Action for Childhood Arrivals ("DACA"). He resides in Chicago, Illinois.

4. Defendant Gregory A. Richardson is the Director of the Texas Service Center of the United States Citizenship and Immigration Services (USCIS). He is sued in his official capacity.

5. Defendant David Roark is the Director of the Texas Service Center of USCIS. He is sued in his official capacity.

6. Defendant Malethea Holmes-Okeawolam is a USCIS official at the Texas Service Center. Mr. Lopez was instructed to return his three-year employment authorization to Ms. Holmes-Okeawolam. She is sued in her official capacity.

7. Defendant Officer # XM0012 is a USCIS official at the Texas Service Center. His or her legal identity is unknown. Officer # XM0012 issued two letters to Mr. Lopez regarding revocation of his three-year employment authorization. Officer # XM0012 is sued in his or her official capacity.

8. Defendant Daniel Renaud is the Associate Director for Field Operations Directorate of USCIS. Mr. Renaud's office issued Mr. Lopez a "Notice of Intent to Terminate Deferred Action and Employment Authorization." He is sued in his official capacity.

9. Defendant Donald W. Neufeld is the Associate Director for Service Center Operations of USCIS. He is sued in his official capacity.

10. Defendant León Rodríguez is the Director of USCIS. He is sued in his official capacity.

## STATEMENT OF FACTS

**USCIS Issuance of Employment Authorization to DACA Recipients**

11. By statute, USCIS may grant employment authorization to certain classes of noncitizens. 8 U.S.C. § 1324a(h)(3)(B). One such class is individuals "who ha[ve] been granted deferred action, an act of administrative convenience to the government which gives some cases lower priority, if the alien establishes an economic necessity for employment." 8 C.F.R. § 274a.12(c)(14).

12. USCIS grants employment authorization to DACA recipients, including Mr. Lopez, under this category. When USCIS grants employment authorization, it issues to the recipient an Employment Authorization Document ("EAD").

13. Employment authorization is essential to DACA recipients who are trying to build their lives in the United States. It allows them to raise funds for post-secondary education, participate in the workforce, pay for necessary health care costs, support themselves and their families, and save for the future.

14. Under USCIS regulations, the agency has discretion to grant or deny employment authorization applications and to establish the initial period of employment authorization.

15. Once the agency exercises its discretion and grants employment authorization, however, federal regulations limit USCIS' authority to revoke the authorization. *See* 8 C.F.R. § 274a.14(b).

16. Revocation is permissible only when a condition upon which employment authorization was granted has not been met or ceases to exist; upon a showing that the information in the application is not true and correct; or for "good cause shown." *Id.* § 274a.14(b)(1).

17. None of these circumstances or enumerated grounds for revocation applied to Mr. Lopez.

18. Additionally, if USCIS seeks to revoke a non-citizen's authorization to work, regulations require USCIS to provide written notice of intent before revoking employment authorization. *Id.* § 274a.14(b)(2). The notice must state the grounds upon which revocation is warranted, and once served, the regulations provide the affected party fifteen days to submit countervailing evidence. *Id.*

19. Defendants failed to provide Mr. Lopez with a written notice of intent prior to revoking his employment authorization.

20. The regulations further provide that an affected party may not appeal the agency's determination to revoke employment authorization. *Id.*

21. USCIS is bound by these regulations, which constrain its power to revoke employment authorization for the period of time granted. Accordingly, these regulations create a legal right to a proper process for revocation and a legitimate claim of entitlement to employment authorization once granted. *Id.* § 274a.14(b).

22. Under the original 2012 DACA guidance, USCIS grants deferred action and employment authorization for a period of two years, subject to renewal for additional two-year periods. Mem. of Janet Napolitano, Sec'y of Homeland Security, to Alejandro Mayorkas, Director, USCIS, *Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children*, June 15, 2012 ("2012 DACA Memorandum") (attached hereto as Exhibit A). Pursuant to the 2012 DACA Memorandum, individuals who came to the United States as children, lack a serious criminal history, attend school, and meet other criteria may request that the DHS Secretary grant them deferred action, a form of prosecutorial discretion, for a two-year period. Those granted deferred action in this manner are also eligible for employment authorization and a Social Security card. *See id.*

23. On November 20, 2014, President Obama and Secretary of Homeland Security Jeh Johnson announced a series of further executive actions for immigration relief, including the creation of the Deferred Action for Parents of Americans and Lawful Permanent Residents ("DAPA") program. Mem. of Jeh Charles Johnson, Sec'y of Homeland Security, to León Rodríguez, Director, USCIS, *Exercising Prosecutorial Discretion with Respect to Individuals*

*Who Came to the United States as Children and with Respect to Certain Individuals Who Are the Parents of U.S. Citizens or Permanent Residents* 3, Nov. 20, 2014 ("2014 DACA/DAPA Memorandum") (attached hereto as Exhibit B).

24. The 2014 DACA/DAPA Memorandum also outlined an expansion of DACA, liberalizing the eligibility criteria and authorizing the grant or renewal of deferred action and employment authorization for a period of three years ("expanded DACA"). *Id.*

**The *Texas v. United States* Litigation**

25. On December 3, 2014, Texas and thirteen other plaintiff states, along with the governors of four other states, filed a civil action in the U.S. District Court for the Southern District of Texas against DHS Secretary Jeh Johnson and other federal immigration officials, seeking an injunction to halt the implementation of DAPA and expanded DACA. Eight more states and one state attorney general later joined the suit as plaintiffs.

26. Neither the State of Illinois nor any Illinois official joined the lawsuit as a party. Three Texas residents who were potential beneficiaries of DAPA moved to intervene, but the district court denied that motion.

27. Without holding an evidentiary hearing, Judge Andrew S. Hanen entered a preliminary injunction in favor of plaintiffs on February 16, 2015, enjoining the Secretary's implementation of DAPA and expanded DACA, including, of relevance here, the new DACA provision permitting a grant or renewal of deferred action and employment authorization for a period of three years. By its terms, the preliminary injunction applied nationwide. *Texas v. United States*, 86 F. Supp. 3d 591, 677-78 (S.D. Tex. 2015).

28. Judge Hanen's preliminary injunction relied on a finding that Texas had sufficiently satisfied the necessary standing requirements for the granting of injunctive relief. *Id.*

7

at 620. The Court stated, "If the majority of the DHS Directive beneficiaries residing in [Texas] apply for driver's licenses, Texas will bear directly a $174.73 per applicant expense, costing the state millions of dollars." *Id*. Judge Hanen's order was also based on a determination that adoption of DAPA and expanded DACA violated the APA's procedural requirements, and that, consequently, Texas and other plaintiff states had a substantial likelihood of success on the merits. *Id.* at 671-72.

29. The plaintiffs did not include class allegations in their complaint, and did not move for or obtain class certification on a nationwide or other basis.

30. The government appealed to the U.S. Court of Appeals for the Fifth Circuit. On appeal, fifteen states and the District of Columbia filed an amicus curiae brief in support of the government. The brief included the State of Illinois.

31. These states and the District of Columbia denied that implementation of DAPA or expanded DACA created any risk of harm to them, pointing out that the types of costs Texas alleged are a matter of state choice, not federal coercion, and contending that the district court had little information to determine the cost of licensing under DAPA and expanded DACA outside of Texas. They also argued that, since the only evidence of harm cited was confined to Texas, the preliminary injunction was overbroad, and the court should at the very least limit it to plaintiff states, if not to Texas alone.

32. A divided Fifth Circuit panel affirmed entry of the preliminary injunction, *Texas v. United States*, 809 F.3d 134 (5th Cir. 2015), while unanimously reversing the denial of the motion to intervene by the three Texas residents who would be potential beneficiaries of DAPA, *Texas v. United States*, 805 F.3d 653 (5th Cir. 2015).

33. On June 23, 2016, the Supreme Court affirmed the Fifth Circuit decision by an

equally divided court, leaving the Fifth Circuit opinion in place without setting precedent. *United States v. Texas*, 136 S. Ct. 2271 (2016) (per curiam), *rehearing denied*, 2016 WL 5640497 (Oct. 3, 2016); *see Neil v. Biggers*, 409 U.S. 188 (1972) (noting that "[t]he legal effect" of an equally divided opinion "would be the same if the appeal, or writ of error, were dismissed").

34. On May 19, 2016, Judge Hanen issued an expansive sanctions order, directing the government to file under seal a list of the names, addresses, contact information, and alien registration numbers of all individuals in the Plaintiff States granted benefits under the 2014 DACA/DAPA Memorandum between November 20, 2014 and March 3, 2015, for possible future release. Mem. Op. & Order, *Texas v. United States*, No. B-14-254 (S.D. Tex. May 19, 2016), ECF No. 347 ("Sanctions Order") (attached hereto as Exhibit C). He further ordered that "any attorney employed at the Justice Department in Washington, D.C. who appears, or seeks to appear, in a court (state or federal) in any of the 26 Plaintiff States annually attend a legal ethics course" for five years. *Id.* at 25-26. Following the filing of two petitions for writs of mandamus with the Fifth Circuit for judicial review, Judge Hanen stayed the Sanctions Order pending further proceedings.

**Plaintiff José Lopez**

35. José Lopez was born in Mexico and raised in Chicago's Eastside neighborhood from the age of four. Mr. Lopez lives with his parents, who would likely be eligible for DAPA were it implemented, and two younger brothers, who are both U.S. citizens. Mr. Lopez considers Chicago his home, as it is the only place where he has lived since age four. Indeed, Mr. Lopez has no memories of a time when Chicago was not his home.

36. Mr. Lopez attended Matthew Gallistel Language Academy in Chicago's Eastside

9

neighborhood from kindergarten through eighth grade. When he was in third or fourth grade, he was invited to participate in an advanced math program at the University of Chicago, Hyde Park, which he participated in for two years in a row. This experience opened Mr. Lopez's eyes to other parts of Chicago and ignited his dreams of attending university.

37. Mr. Lopez attended George Washington High School from 2006 until 2008. While at George Washington, Mr. Lopez ran on the school's cross country team. During his sophomore year of high school, Mr. Lopez received a flyer in the mail from DeVry University, offering him an opportunity to obtain both his high school diploma and an Associate of Applied Science degree simultaneously. Mr. Lopez determined that this provided him an exciting opportunity to see another part of Chicago and allowed him to gain the practical skills that an Associate of Applied Science degree could provide for future employment. He decided to transfer to DeVry before his junior year of high school. Mr. Lopez received his high school diploma as well as an Associate of Applied Science degree in graphic design from DeVry University, which he attended from 2008 until his graduation in 2010.

38. After enlisting the help of two private immigration attorneys and paying more than $1,800 in associated fees in his effort to apply for immigration relief under DACA, Mr. Lopez found the National Immigrant Justice Center ("NIJC"), which helped him finally apply for DACA. With the help NIJC pro bono lawyers, Mr. Lopez submitted his application for DACA on March 31, 2014.

**Approval of DACA Application and Issuance of Three-Year EAD**

39. On November 20, 2014, President Obama and the Secretary of Homeland Security announced the expansion of DACA and the creation of DAPA. *See supra* ¶ 18-19; Exhibit B.

40. On February 17, 2015—one day after the court entered a preliminary injunction in *Texas v. United States*—DHS approved Mr. Lopez's application for DACA, and pursuant to the government's announcement, granted Mr. Lopez a three-year employment authorization, valid from February 17, 2015 to February 16, 2018.

41. Upon receiving deferred action and employment authorization on February 17, 2015, Mr. Lopez felt like a tremendous weight had been lifted and had a renewed hope in his future. DACA opened the door for Mr. Lopez to obtain more secure employment, which allowed him to feel that his dream of finishing his education was both a real possibility and a worthwhile investment.

42. Because of the opportunities DACA has provided him, Mr. Lopez is able to pay for his undergraduate studies. Before DACA, he experienced lapses in his studies because of the financial burden of higher education expenses. With deferred action and work authorization, Mr. Lopez was able to raise money for school and to help support his family. While his immigration status has forced him on to a non-traditional education track, Mr. Lopez is determined to be a role model to his younger brothers.

43. Mr. Lopez finished a second associate's degree at Harold Washington School in business and economics, and is currently seeking transfer to the University of Illinois, Chicago to pursue his bachelor of arts degree in finance. He plans to start a business that supports other start-ups in managing their own brands, to help others achieve success in their business endeavors. Mr. Lopez's ability to start his career, however, remains uncertain—and additionally so because of Defendants' unlawful actions that are challenged here.

**Revocation of Plaintiff's Three-Year Employment Authorization**

44. On May 7, 2015, Secretary Johnson informed Judge Hanen that despite the

court's February 16, 2015 preliminary injunction in *Texas v. United States*, USCIS had, after the injunction was entered, issued three-year terms of deferred action and employment authorization to approximately 2,000 individuals. Defendants' May 7 Advisory, *Texas v. United States*, 86 F. Supp. 3d 591 (S.D. Tex. 2015) (No. B-14-254), ECF No. 247 ("May 7 Advisory") (attached hereto as Exhibit D). Mr. Lopez is one of those individuals.

45. Although his DACA application was submitted almost a year before the preliminary injunction in *Texas v. United States* was entered on February 16, 2015, Mr. Lopez's EAD was not issued until sometime thereafter.

46. On May 1, 2015, Defendants caused a letter to be sent to Mr. Lopez instructing him to "return … any 3-year approval notice[] received." USCIS Letter dated May 1, 2015, (attached hereto as Exhibit E); *see also* USCIS, Forms I-797 Notice of Action (May 6, 2015) (attached hereto as Exhibit F) (stating that Mr. Lopez's case had been "reopened" or the prior decision had been "reconsidered," and that he had been approved for a two-year period of employment authorization instead). The revocation of Mr. Lopez's three-year EAD and replacement with a two-year EAD was due exclusively to the injunction in *Texas v. United States*.

47. Two months later, on July 6, 2015, Defendants sent a letter to Mr. Lopez, instructing him to "IMMEDIATELY RETURN the previous EAD [with a 3-year validity period listed] that is now invalid." USCIS Letter dated July 6, 2015 at 1 (attached hereto as Exhibit G) (emphasis in original). The letter also stated that failure to return his 3-year EAD might "affect [his] deferred action and employment authorization." *Id.* at 1. The letter concluded by stating: "The reason for this action is that, after a court order in *Texas v. United States*, No. B-14-254 (S.D. Tex.), USCIS approves deferred action requests and related employment authorization

12

applications based upon DACA only for 2-year periods." *Id.* at 2.

48. Pursuant to USCIS' instructions, on or about July 11, 2015, Mr. Lopez returned the EAD with a three-year period of validity via U.S. mail.

49. On July 13, 2015, Defendants sent a third letter to Mr. Lopez, again demanding that he return his EAD with a three-year period of validity and providing only one explanation for its revocation: "USCIS is sending this notice to certain DACA recipients who were mistakenly sent 3-year work authorization cards **after** a court order was in place prohibiting issuing cards valid for longer than 2 years." USCIS Letter dated July 13, 2015 at 1 (attached hereto as Exhibit H) (emphasis in original).

50. Mr. Lopez has not appealed USCIS' revocation of his three-year employment authorization because there are no administrative avenues by which to seek relief. *See* 8 C.F.R. § 274a.14(b)(2).

51. Due to Defendants' revocation of his three-year employment authorization, Mr. Lopez now must undertake an application for renewal of his DACA and employment authorization, which is set to expire on February 16, 2017. The renewal process requires locating, acquiring, and submitting documents, getting fingerprinted, paying a total of $465 in fees, and potentially notifying Mr. Lopez's current employer.

52. Further, Mr. Lopez may need to resign from his current position due to the prolonged and uncertain duration of the renewal process. Mr. Lopez would also like to apply for internships but is concerned that he may experience gaps in his work authorization as he seeks renewal, and that it may disqualify him for these important internships.

53. In revoking Mr. Lopez's three-year employment authorization and issuing a two-year authorization in its place, USCIS did not refund him this $465 in fees or any portion thereof.

54. Although Mr. Lopez did not participate in the *Texas v. United States* litigation, Defendants revoked and deprived him of his three-year period of employment authorization on the sole ground of the *Texas* preliminary injunction. Mr. Lopez had no opportunity to contest the revocation of his three-year employment authorization or to vindicate his rights.

55. At no time have any of the parties to *Texas v. United States* attempted to join to that litigation either Mr. Lopez or others who had three-year employment authorizations revoked, or otherwise allow him his day in court.

56. The plaintiffs in *Texas v. United States* lacked standing to seek or obtain a nation-wide injunction requiring Defendants to revoke Mr. Lopez's three-year employment authorization and his duly issued three-year EAD.

57. Further, the plaintiffs in that case lacked standing to assert injury arising from Illinois residents receiving three-year terms of employment authorization.

58. Because "[t]he remedy must of course be limited to the inadequacy that produced the injury in fact," *Lewis v. Casey*, 518 U.S. 343, 357 (1996), the injury-in-fact found by the *Texas* court in issuing a nationwide preliminary injunction—the marginal cost to Texas and potentially to Indiana and Wisconsin of issuing driver's licenses to individuals newly eligible for them under state law due to the receipt of deferred action—was "a patently inadequate basis for . . . imposition of system-wide relief," *id.* at 359.

59. The court in *Texas* lacked both jurisdiction and remedial authority to enter a nationwide preliminary injunction that was broader than necessary to remedy the specific harm to the plaintiffs, *see Califano v. Yamasaki*, 442 U.S. 682, 702 (1979), because it had neither made a final determination as to the lawfulness of any agency rule nor found concrete evidence of irreparable harm to persons or states other than one named plaintiff, *see Lewis*, 518 U.S. at

349-50, 349 n.1 (holding that a district court's overly broad injunction, in light of the scope of plaintiffs' standing, raised a "jurisdictional" issue).

60. Mr. Lopez does not possess a Texas driver's license, has never resided in Texas, and disclaims all intention of moving there or applying for a Texas driver's license during the term of the three-year employment authorization that he received from USCIS.

61. The state where Mr. Lopez resides, Illinois, has denied that the implementation of the November 20, 2014 memorandum would cause the harm necessary to issue an injunction applicable in that state.

62. Even if Mr. Lopez moved to Texas while possessing a three-year term of employment authorization, he would be required by law to notify USCIS of a change of address within ten days. 8 C.F.R. § 265.1. At that time, and if still subject to the *Texas v. United States* injunction, USCIS could revoke Mr. Lopez's three-year employment authorization and provide him with a two-year period of employment authorization instead.

63. Furthermore, even if Mr. Lopez moved to Texas with a three-year EAD in hand and applied for a Texas driver's license without informing USCIS of his change of address, Mr. Lopez would be flagged by USCIS's Systematic Alien Verification for Entitlements ("SAVE") system, which the Texas Department of Public Safety uses to confirm the eligibility of each driver's license applicant. At that point, USCIS could revoke Mr. Lopez's three-year employment authorization and provide him with a two-year period of employment authorization instead. Nonetheless, Mr. Lopez has no intention of moving to or seeking a driver's license in Texas in the near future.

64. This Court has the jurisdiction and authority to determine whether Defendants' revocation of Mr. Lopez's three-year employment authorization violated his rights. *See* 5 U.S.C.

§§ 702, 706; *Martin v. Wilks*, 490 U.S. 755, 758-59 (1989) (holding that litigants deprived of legal rights by a prior action to which they were not parties could bring a collateral attack against the consent decree resulting from that action).

65. Mr. Lopez is entitled to relief in this court because the *Texas* injunction jeopardizes his legally protected interest in his three-year employment authorization. *See McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 491 (1991) (holding that where employment authorization was granted upon noncitizen's filing of nonfrivolous agricultural worker application, "the impact of a denial on the opportunity to obtain gainful employment [was] plainly sufficient to mandate constitutionally fair procedures").

66. Defendants' revocation of Mr. Lopez's three-year employment authorization is not in accordance with law. USCIS erred in revoking Mr. Lopez's employment authorization based on an overly broad injunction entered by a court in Texas that lacked jurisdiction to reach Illinois residents.

67. Defendants' revocation of Mr. Lopez's three-year employment authorization was done without observance of procedure required by law, as it violates binding USCIS regulations that permit revocation only when a condition upon which employment authorization was granted has not been met or ceases to exist; upon a showing that the information in the application is not true and correct; or for "good cause shown." 8 C.F.R. § 274a.14(b).

68. Mr. Lopez is aggrieved by Defendants' final agency action in revoking his three-year employment authorization.

69. Mr. Lopez has exhausted his administrative remedies. *See* 8 C.F.R. § 274a.14(b)(2) ("The decision by the district director shall be final and no appeal shall lie from the decision to revoke the authorization.").

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### ADMINISTRATIVE PROCEDURE ACT

70. Mr. Lopez repeats and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

71. Defendants' revocation of Mr. Lopez's employment authorization was not in accordance with law, in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A), in that it was based on a legal error—namely, the unlawfully broad preliminary injunction entered in *Texas v. United States*, which was entered without jurisdiction and in excess of the issuing court's remedial authority.

72. Mr. Lopez is entitled to request that this Court declare Mr. Lopez's legal right not to have his employment authorization revoked based on a legal error, vacate and set aside the revocation, and enjoin Defendants from revoking his employment authorization on the basis of the *Texas* injunction. 5 U.S.C. § 706(2); 28 U.S.C. §§ 2201-02.

### SECOND CLAIM FOR RELIEF
### ADMINISTRATIVE PROCEDURE ACT

73. Mr. Lopez repeats and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

74. Defendants' revocation of Mr. Lopez's employment authorization was not done "for good cause shown" or for any other reason permitted by 8 C.F.R. § 274a.14, and was thus done "without observance of procedure required by law," in violation of the APA, 5 U.S.C. § 706(2)(D).

75. Mr. Lopez is entitled to request that this Court declare his legal right not to have his employment authorizations revoked without observance of procedure required by law, vacate

and set aside the revocation, and enjoin Defendants from revoking his employment authorization on the basis of the *Texas* injunction. 5 U.S.C. § 706(2); 28 U.S.C. §§ 2201-02.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully request the Court to:

(a) Issue a declaratory judgment stating that the February 2015 preliminary injunction entered in *Texas v. United States* does not apply to Illinois residents such as Mr. Lopez;

(b) Issue a declaratory judgment stating that Defendants' revocation of Mr. Lopez's three-year employment authorization, based on the preliminary injunction issued in *Texas v. United States*, was an "agency action" that was "not in accordance with law," in violation of the APA, 5 U.S.C. § 706(2)(A);

(c) Issue a declaratory judgment stating that Defendants' revocation of Mr. Lopez's three-year employment authorization was an "agency action" that was "without observance of procedure required by law," in violation of the APA, 5 U.S.C. § 706(2)(D), as it was not premised on any circumstance listed in 8 C.F.R. § 274a.14(b)(1)(i);

(d) Hold unlawful and set aside Defendants' revocation of the three-year employment authorization of Mr. Lopez, and order Defendants to restore it;

(e) Enjoin Defendants from revoking Mr. Lopez's three-year employment authorization on the basis of the preliminary injunction in *Texas v. United States*;

(f) Award Mr. Lopez reasonable attorneys' fees and costs pursuant to 5 U.S.C. § 504 and 28 U.S.C. § 2412; and

(g) Grant any and all further relief this Court deems just and proper.

Dated: Oct. 12, 2016

Respectfully submitted,

s/ Mark Fleming
Mark Fleming
NATIONAL IMMIGRANT JUSTICE CENTER
208 S. LaSalle Street, Suite 1300
Chicago, IL 60604
Phone: (312) 660-1628
mfleming@heartlandalliance.org

Karen C. Tumlin*
Mayra B. Joachin*
NATIONAL IMMIGRATION LAW CENTER
3435 Wilshire Boulevard, Suite 1600
Los Angeles, CA 90010
Phone: (213) 639-3900
tumlin@nilc.org
joachin@nilc.org

Justin Cox*
NATIONAL IMMIGRATION LAW CENTER
1989 College Ave. NE
Atlanta, GA 30317
Phone: (678) 404-9119
cox@nilc.org

Melissa S. Keaney*
NATIONAL IMMIGRATION LAW CENTER
7782 Greenridge Way
Fair Oaks, CA 95628
Phone: (213) 674-2820
keaney@nilc.org

Sara Dady
DADY & HOFFMANN LLC
401 E. State Street, 2nd Fl.
Rockford, IL 61104
Phone: (815) 394-1359
sdady@dadyhoffmann.com


* Pro Hac Vice *application forthcoming*